```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
CHRISTOPHER HOUSTON,                                                     :
                                                                         :    14 Civ. 2980 (PAE)
                                              Petitioner,                :
                                                                         :    OPINION & ORDER
                         -v-                                             :
                                                                         :
CATHERINE LINAWEAVER,                                                    :
                                                                         :
                                              Respondent.                :
                                                                         :
------------------------------------------------------------------------ X
```

PAUL A. ENGELMAYER, District Judge:

*Pro se* prisoner Christopher Houston ("Houston") brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Metropolitan Correctional Center ("MCC"). Houston claims that he was deprived of good conduct time—and thus early release from prison—without due process of law. Respondent Catherine Linaweaver, MCC's warden, opposes the petition on the grounds that (1) Houston received a full and fair hearing before being denied good conduct time; and (2) on the merits, the decision was supported by sufficient evidence. Linaweaver is correct on both points. The petition is denied.

## I.      Background[1]

### A.      Facts of the Instant Case

Houston is currently serving a 33-month sentence in federal prison for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. *See* Dkt. 12 ("Rivers Decl.") Ex. A.

---

[1] The Court's account of the underlying facts is drawn from the Petition for Writ of Habeas Corpus (Dkt. 1) ("Pet."), Respondent's Return and Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 11) ("Resp. Br."), and other documents as cited.

1

Houston is due to be released from prison on July 18, 2014. Initially, Houston was housed at the MCC. On November 26, 2013, Houston was transferred from the MCC to the Brooklyn House Residential Reentry Center ("RRC"), a halfway house located in Brooklyn, New York, where he was to receive pre-release programming and training. *See* Rivers Decl. Ex. B.

On December 30, 2013, Kilola Hurry ("Hurry"), the mother of Houston's child, called the RRC to report that Houston had made threatening phone calls to her, both at her home and her place of business, and that he had made an unwanted visit to her home. *See* Rivers Decl. Ex. E ("Incident Report") at 1. Hurry also faxed to the RRC a Temporary Order of Protection that she had obtained against Houston in Family Court of the State of New York, dated December 27, 2013. *See id.* In support of that petition, Hurry had submitted a sworn statement to the Family Court, in which, *inter alia*, she described an incident in which Houston had verbally harassed and threatened her. *See* Rivers Decl. Ex. F. In that statement, Hurry stated that Houston had repeatedly called her on her cell phone and at work demanding to see her, and that when she refused to do so other than at a police precinct, he told her that he "knows where to find her" and that he was willing to use a third party to "get to her." *Id.*

On March 13, 2014, the Bureau of Prisons ("BOP") commenced an investigation into Hurry's allegations; Houston declined to participate in that investigation. *See* Incident Report at 2. The BOP prepared an Incident Report documenting Hurry's allegations and charging Houston with committing a "High Severity Level Prohibited Act" under 28 C.F.R. § 541.3, to wit, "Threatening Another With Bodily Harm" (Code 203). *Id.* at 1; *see* 28 C.F.R. § 541.3 (listing "Threatening Another With Bodily Harm" as a "High Severity Level Prohibited Act," and designating it a Code 203 violation). The Incident Report was delivered to Houston, and then

2

forwarded to the Center Discipline Committee ("CDC") for an in-person hearing. *See* Incident Report at 1.

On March 13, 2014, Houston was notified in writing that his CDC hearing would take place on March 19, 2014. *See* Rivers Decl. Ex. G. At the hearing, Houston waived his right to a staff representative and declined to call witnesses on his behalf, but he did ask the CDC to consider certain documents in rendering its decision. *See* Rivers Decl. Ex. H ("CDC Report") at 1. At the hearing's conclusion, the CDC found that Houston had committed the prohibited act of Threatening Another With Bodily Harm. The CDC cited both the Incident Report[2] and the Temporary Order of Protection as the bases for its decision. *See id.* at 1–2.

After the hearing, the CDC Report was forwarded to a BOP Discipline Hearing Officer ("DHO") for review and certification. *Id.* On March 28, 2014, based on the CDC Report, the DHO imposed a sanction of disallowance of 10 days good conduct time, loss of 54 days of non-vested good conduct time, and removal from the RRC. *Id.* As a result of his misconduct, Houston was transferred back to the MCC, where he has resided since. Taking into account these sanctions, the date when Houston is to be released from custody is now July 18, 2014; previously, it had been May 23, 2014. *See* Pet ¶ 12; Resp. Br. 1.

On April 7, 2014, Houston was notified in writing of the CDC's decision, and was provided with both a copy of the Report and a Regional Administrative Remedy Appeal form, which informed Houston how to appeal the decision. *See* Rivers Decl. Ex. J.

---

[2] On March 20, 2014, the Incident Report appears to have been revised to include threats to Hurry by Houston that were detailed in an earlier incident report, dated December 30, 2013, *see* Rivers Decl. Ex. L, and adjudicated in a prior CDC hearing, on January 2, 2014, *see* Rivers Decl. Ex. M. *See* Rivers Decl. Ex. K.

### B. Procedural History

On April 23, 2014, Houston, proceeding *pro se*, filed this petition pursuant to 28 U.S.C. § 2241. *See* Pet. In the petition, Houston challenges his detention past May 23, 2014, on the ground that he was unlawfully deprived of 64 days of good conduct time without due process of law. *See id.* ¶¶ 3, 11. Specifically, he claims that he did not receive a pre-deprivation disciplinary hearing, nor did he receive a written decision of the CDC or DHO. *See id.* ¶ 13.

On May 14, 2014, this case was assigned to my docket. On May 19, 2014, the Court issued an Order directing Respondent, *inter alia*, to file a notice of appearance by May 28, 2014. Dkt. 4. On May 30, 3014, Houston submitted a letter styled "Application for an Order to Show Cause," requesting expedited consideration of his habeas petition. Dkt. 6. On June 11, 2014, the Court, recognizing the time sensitivity of Houston's petition, issued an Order directing Respondent to file an answer or other responsive pleading by June 25, 2014. Dkt. 8.

On June 25, 2014, Respondent filed a memorandum of law in opposition to the Petition. Dkt. 11.

## II. Legal Standard

Any inmate who "is in custody in violation of the Constitution or laws or treaties of the United States" may file a petition for a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may bring a § 2241 petition to challenge the legality of disciplinary sanctions, including "the loss of good time credits." *Id.*

Inmates are constitutionally entitled to certain procedural safeguards in prison disciplinary proceedings, but not "'the full panoply of rights' due to a defendant in a criminal prosecution." *Hernandez v. Selsky*, 572 F. Supp. 2d 446, 450 (S.D.N.Y. 2008) (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)).  In a pre-deprivation hearing, due process requires that inmates receive "(1) advance written notice of the disciplinary charges; (2) a reasonable opportunity to call witnesses and present evidence at a hearing; (3) a fair and impartial hearing officer; (4) a written statement of disposition, including findings of fact and the reasons for the disciplinary action; and (5) support by 'some evidence' of any conviction." *Id.*

The BOP has also promulgated regulations that guarantee to federal prison inmates certain rights in disciplinary hearings, including, *inter alia*, advance written notice of the charges, 28 C.F.R. § 541.8(c); the assistance of a staff representative before and during the hearing, *id.* § 541.8(d); the opportunity to appear at the hearings and to present witnesses and documentary evidence, *id*. §§ 581.8(e) & (f); and a written report from the DHO stating the disposition and specifying the evidence on which it relied, *id*. § 541.8(h).

**III.    Discussion**

Houston claims that he was deprived of good conduct time without due process of law, *i.e.*, without a full and fair hearing in which he was permitted to present evidence and call witnesses.  He also claims that he did not receive a written report containing the decision against him.

Before filing a § 2241 petition, an inmate must exhaust all administrative remedies.  *See Carmona*, 243 F.3d at 633.  "A court can excuse a failure to exhaust administrative remedies 'when such exhaustion would be futile or where the agency has predetermined the issue before it.'"  *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (quoting *Garcia v.*

5

*Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. May 1, 2009)); *see also Atkinson v. Linaweaver*, No. 13 Civ. 2790 (JMF), 2013 WL 5477576, at *1 (S.D.N.Y. Oct. 2, 2013).  Here, there is no evidence in the record that Houston sought to appeal the decision of the CDC and DHO.  And Houston concedes that he did not exhaust his administrative remedies.  *See* Pet. ¶ 21.  However, he states that the normal BOP Administrative Remedy process "takes on average 6-12 months to complete," and therefore could not provide him adequate relief, given the May 23, 2014 release date he sought.  *Id*.  The Court treats this as an argument to excuse Houston's failure to file the appeal, as required to exhaust his administrative remedies within the BOP.

Courts in this District have expressed doubt whether a "time constraint" can excuse an inmate's failure to exhaust his administrative remedies.  *See, e.g.*, *Rosenthal*, 667 F. Supp. 2d at 367.  The Court here has no occasion, however, to resolve this issue.  Even assuming that the time constraints presented by Houston's release timetable excused him from exhausting his administrative remedies, the evidence in the record leaves no doubt that (1) all the procedural safeguards owed to Houston under the Due Process Clause and federal regulations were provided to him; and (2) ample evidence of his misconduct supported the decision to deny him "good conduct" time.

As to Houston's Due Process claim, Houston was undeniably served with the Incident Report.  Houston's habeas petition explicitly states that, on December 30, 2013, "an 'incident report' was delivered to Petitioner by Brooklyn House staff, alleging Petitioner had violated Code 203, Threatening another with bodily harm."  Pet. ¶ 8.  Although Houston takes issue with the fact that the RRC failed to provide him a copy of the Order of Protection obtained by Hurry,

*see id.*, the Incident Report, which on its face summarized Hurry's allegations, gave Houston the required notice of the charges against him.[3]

Further, the evidence soundly refutes Houston's claims that he "did not have a disciplinary hearing, nor was he able to appear at any kind of hearing, call and examine witnesses, or present evidence in his favor," Pet. ¶ 13, and that, if he had "been provided the opportunity to gather and present evidence at a hearing, he would have been able to show an alibi," *id*. ¶ 19. The record indicates that Houston was provided with written notice that his CDC hearing would take place on March 19, 2014, at 2:55 p.m., at MDC Brooklyn; however, Houston "refused to sign" indicating that he had received this notification. *See* Rivers Decl. Ex. G. The record further indicates that Houston was advised of his rights prior to the CDC hearing by Investigative Specialist Grandison, and that Houston waived both his right to have a staff representative assist him at the hearing and his right to call witnesses at the hearing. *See id.*; *see also* CDC Report at 1. The CDC Report, reviewed and certified by the DHO and signed by Committee Chairperson Allen, also indicates that Houston, in some fashion, participated in the hearing, even if minimally. Although not initialed by Houston, the Report states that "Resident Houston would like us to refer back to the initial statement from Dr. Terry. He would also like to obtain his call logs and sign in/out sheets from Brooklyn House. He would also like to obtain his progress reports from Salgado. Also, a copy of the Halfway House Rules." CDC Report at 1. The record also indicates that, following the hearing, Houston was provided with a copy of the CDC Report, which cites the specific evidence relied upon by the Committee in reaching its findings. *See id.* at 2 ("A copy of this report has been given to the inmate."). The record thus

---

[3] In any event, Houston, by his own admission, was served with the Order of Protection months before his CDC hearing. *See* Pet. ¶ 10. Thus, he cannot credibly claim that he was not on notice of these charges.

7

disposes of Houston's claim that his good-time credits were taken from him without the procedural safeguards guaranteed by the Constitution and by federal regulations.

Turning to the merits, Houston challenges the alleged unlawful deprivation of his earned and non-vested good conduct time. A prisoner who has "displayed exemplary compliance with institutional disciplinary regulations" is eligible for good conduct time, but those credits may be forfeited if the DHO determines that the inmate has committed one (or more) of several prohibited acts. 18 U.S.C. § 3624(b)(1) ("if the [BOP] determines that . . . the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate"); *see* 28 C.F.R. § 541.3 (listing prohibited acts and available sanctions). Inmates have a liberty interest in good time credit already earned, and thus "'due process requires that the findings of the disciplinary board be supported by *some evidence* in the record.'" *Whalen v. F. Bureau of Prisons*, No. 09 Civ. 1572 (ENV), 2011 WL 2669112, at *4 (E.D.N.Y. June 30, 2011) (quoting *Williams v. Menifee*, 331 F. App'x 59, 60–61 (2d Cir. 2009)) (other internal quotation marks omitted) (emphasis added).

Here, Houston was charged with committing a Code 203 violation, to wit, threatening and harassing the mother of his child. The evidence relied upon in the CDC Report (*i.e.*, the Order of Protection issued by the Family Court and Hurry's sworn statement in support of her petition for that Order), is sufficient to support the CDC's finding that Houston had committed the prohibited act for which he was charged. *See Sira*, 380 F.3d at 76 ("some evidence" standard satisfied where "there is any evidence in the record that *could* support the conclusion reached by the disciplinary board") (emphasis added). This finding of misconduct, in turn, supports the DHO's imposition of disciplinary sanctions. *See* 28 C.F.R. § 541.3 (once an inmate has been

found to have committed a Code 203 violation, list of available sanctions that the BOP may impose includes "[f]orfeit[ure] and/or withhold[ing] earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time").

In sum, there is no basis in the record for Houston's allegation that he was deprived of good conduct time without due process of law.

## CONCLUSION

For the foregoing reasons, the petition is denied. The Clerk is directed to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 15, 2014
New York, New York

9